## QUINCE HENRY v. THE STATE.

1. THEFT—OWNERSHIP—CHARGE.—On a trial for theft of two oxen, where the testimony showed that the oxen were taken from the possession of a widow claiming them as her own, but they appeared to be unadministered community property of the estate of her husband : *Held*, proper to instruct the jury, "if the proof shows that she had the oxen in possession, and claimed and exercised acts of ownership over them, the presumption would be that she was the owner, in the absence of satisfactory evidence to the contrary ; *   *  and if the proof further satisfies the jury that the defendant took the said oxen from the possession of the owner without her consent, they will find him guilty."

2. THEFT—JOINT OWNERSHIP.—On a trial for theft of property from the possession of a party who is shown to be a joint owner, and who had the property in possession, such testimony is sufficient proof of ownership.

3. OXEN.—" *Two certain oxen* " is sufficiently certain as a description of stolen property.

APPEAL from Limestone.   Tried below before the Hon. D. M. Prendergast.

Quince Henry was indicted for theft of "two certain oxen of the value of $20 each, and both of the value of $40, the property of Mrs. Mary Cobb."   Upon the trial he was convicted, and his punishment fixed at confinement in the penitentiary for five years.

The testimony showed that the oxen belonged to Mrs. Cobb and the children of her deceased husband, on whose estate there had been no administration, and were in the possession of Mrs. Cobb before the theft.   The other facts sufficiently appear in the opinion.

*Herring, Anderson & Kelly,* for appellant, on the question of variance in the testimony of ownership, cited Whar. Am. Crim. Law, secs. 1820, 1833 ; Ritcher v. State, 38 Tex., 644 ; Paschal's Dig., art. 5488.

2d. The court erred in overruling motion in arrest of

judgment. "The common and ordinary acceptation of property is to govern its description, and the certainty must be to a common intent; by which is meant such certainty as will enable the jury to say whether the chattel proved to be stolen is the same as that upon which the indictment is founded." (Whart. Am. Crim. Law, sec. 355; see also sec. 301.)

Now, the common and ordinary description of oxen is twofold. 1st, marks and brands; 2d, flesh marks.

In this case there is no description whatever. It would seem from a number of cases decided by this court, such as The State v. Garrett, 34 Tex., 674; Short v. The State, 36 Tex., 644, and others of a like character, that no description, such as is necessary to individualize and identify the property, is necessary. But the attention of the court is particularly called to the fact that all these cases are misdemeanors. More certainty is required in cases of felony. But the statute does not make the theft of oxen an offense *eo nomine.* "Cattle" is the term used. (Paschal's Dig., art. 2410a, p. 466a.) And cattle is not a generic word. The bovine genus is only expressed by the compound word neat-cattle.

According to Webster's Unabridged, "cattle" means "goods, movables, cattle; goods, property, especially cattle, from the Latin *capitalis*, relating to the head, chief, because in early ages beasts constituted the chief part of a man's property; hence, property, wealth, capital, or principal sum. 1st. Domestic animals, collectively, especially those of the bovine genus; sometimes also including sheep, goats, horses, asses, and swine. 2d. Animals, persons. 'Boys and women are, for the most part, cattle of this color.' (Shak.)"

Under this definition, and the indictment in this case construing oxen as a synonym of cattle, it is certain that appellant is charged with the theft of property of some sort; but what kind, whether goods, beasts, boys, or women, does not appear.

*George Clark, Attorney General,* for the State.

IRELAND, ASSOCIATE JUSTICE.—The first error complained of is in the charge of the court as to ownership of the property stolen, which is as follows: "And if the proof shows that she (meaning Mrs. Cobb) had them (the oxen) in possession, and claimed and exercised acts of ownership of them, the presumption would be that she was the owner, in the absence of satisfactory proof to the contrary, and if the proof further satisfies them (the jury) that the defendant took said oxen from the possession of the owner without her consent." It is insisted that the first part of this charge was erroneous, because the proof showed that the property belonged to the estate of the deceased husband of Mrs. Cobb and herself. The proof very clearly shows this fact, but it also clearly shows that the property was in the possession of and controlled by Mrs. Cobb. The authority relied on to show that this charge is error (Whart. Am. Crim. Law, sec. 1820) is not the law of this case.

By our Code (Paschal's Dig., art. 2381 and note) the ownership may be alleged to be in the one having the special or the one having the general property in the thing stolen, as the pleader may choose.. (Moseley *v*. The State, 42 Tex., 78.)

Undoubtedly, if in our courts the ownership is alleged to be in A and the proof should show that it was in B, the variance would be fatal.

If A and B be joint owners and the property not in possession and control of either, and the pleader should allege that A was owner, the variance would be fatal; but if the ownership be in A and B, and B has actual possession and control, the pleader may allege that the property belonged to B. If A steal property, and C steal it from A, the pleader may allege the ownership to be in A. There was no error in this part of the charge.

The latter part of the charge could not mislead the jury. The jury was not told thereby that Mrs. Cobb was the owner, but the charge was of course based upon the possibility of the jury finding from the proof that Mrs. Cobb was the owner.

The jury was bound under the whole charge to find that Mrs. Cobb was the owner before they were permitted to find that the property was taken from her possession.

If they found that she was the owner, then it was not improper to allude to the owner as "her."

The second error assigned is in overruling the motion for a new trial. This supposed error is disposed of in the discussion as to ownership.

The third and last assignment of error is in overruling defendant's motion in arrest of judgment, which brings in question the sufficiency of the description of the property stolen. The property is described as "two certain oxen."

This court has held that to describe the animal as a "cow," or "steer," or "yearling" is a sufficient description. Is an "ox" less descriptive or less understood than cow, steer, calf, or yearling?

The law does not require the pleader to be so minute and particular as to enable the defendant to successfully plead the judgment and record in bar without the aid of extrinsic proof.

We are referred to Shakespeare to show that the word cattle would include boys and girls. It may well be doubted, however, whether the learned counsel in this case, aided by that great author, could, by any possibility, make "oxen" mean boys and girls.

There was no error in overruling the motion in arrest of judgment. (Parchman v. The State, 44 Tex., 192.)

It is said that the verdict and judgment are excessive and oppressive. It cannot be said, correctly, that a verdict and judgment that is within the limits of the maximum allowed by statute for any particular offense, is excessive or oppressive. His guilt was a question for the jury to determine. The law-making power has regulated the degree of punishment; and if it is excessive, it is a subject for legislative action and not of the courts.

We cannot say that the verdict and judgment is not sup-

ported by the evidence; and finding no error in the record, the judgment is affirmed.

AFFIRMED.